Cite as 2022 Ark. 128

# SUPREME COURT OF ARKANSAS

No. CV-21-599

|  |  |
|---|---|
| | Opinion Delivered: June 2, 2022 |
| ARKANSAS DEPARTMENT OF FINANCE AND ADMINISTRATION; ALCOHOLIC BEVERAGE CONTROL DIVISION; AND THE ARKANSAS MEDICAL MARIJUANA COMMISSION APPELLANTS | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-20-3658] |
| V. | HONORABLE TIMOTHY DAVIS FOX, JUDGE |
| CARROLL COUNTY HOLDINGS, INC., D/B/A EUREKA GREEN APPELLEE | <u>REVERSED AND DISMISSED.</u> |

**BARBARA W. WEBB, Justice**

This is an interlocutory appeal related to a medical marijuana dispensary license. Carroll County Holdings, Inc. ("Eureka Green"), sought temporary and permanent injunctive relief restraining and enjoining the State from issuing replacement dispensary-facility licenses. The State filed a motion to dismiss on the grounds of sovereign immunity. The motion was denied, and this appeal followed. We reverse the circuit court's ruling and dismiss the case below.

## I. *Facts*

Eureka Green submitted a dispensary license for Zone 1. The Arkansas Medical Marijuana Commission (MMC) initially awarded four licenses to Zone 1. Eureka Green was the fifth-highest-scoring applicant. Pursuant to MMC Rules § V.9(g)–(h), the MMC holds

unsuccessful applicants in reserve for twenty-four months from the issuance of the initial licenses to offer the next highest scoring applicant a license if additional licenses are needed or allocated in the Zone. Unselected applicants, like Eureka Green, can remain in the applicant pool or withdraw their request and receive a one-half refund of the license fee. *Id.* Eureka Green withdrew its application and received the partial refund. On June 30, 2020, the MMC created a fifth dispensary in Zone 1. 006.28.1 Ark. Admin. Code § V.9(g)–(h) (WL current through Nov. 15, 2021). Even though Eureka Green had been the fifth-highest-scoring applicant, it was no longer in the running for consideration because it had withdrawn its application. The dispensary license went to a third party and stranger to this case, Natural Root Wellness.

Eureka Green filed suit in the circuit court on June 29, 2020, alleging that the MMC had violated its own rules, the constitution, and the Administrative Procedure Act (APA). There is nothing in the record that indicates Eureka Green appealed the decision of an administrative hearing or that any administrative hearing was ever held before the MMC on any of the issues raised by Eureka Green in the circuit court. The State moved to dismiss on the grounds of sovereign immunity, lack of subject-matter jurisdiction, mootness, and failure to plead facts indicating a cause of action related to equal protection. The circuit court denied the motion, and this appeal followed.

## II. *Standard of Review*

Generally, in this type of interlocutory appeal, we only review issues that implicate sovereign immunity. *See Chaney v. Union Producing, LLC*, 2020 Ark. 388, 611 S.W.3d 482;

2

*Ark. Dep't of Fin. & Admin. v. Carpenter Farms Med. Grp., LLC*, 2020 Ark. 213, at 11, 601 S.W.3d 111, 119. However, such a limitation does not apply to subject-matter jurisdiction. Where the question is one of subject-matter jurisdiction, it does not matter how it arises. *Timmons v. McCauley*, 71 Ark. App. 97, 101, 27 S.W.3d 437, 440 (2000). Even though this case came to us on a denial of sovereign immunity, as a threshold issue, we must consider subject-matter jurisdiction.

Subject-matter jurisdiction is a court's authority to hear a particular type of case. *Ark. Dep't of Fin. & Admin. v. Naturalis Health, LLC*, 2018 Ark. 224, at 6, 549 S.W.3d 901, 906 (citing *Fatpipe, Inc. v. State*, 2012 Ark. 248, 410 S.W.3d 574). It cannot be waived, can be questioned for the first time on appeal, and we are required to raise it *sua sponte*. *Id.* (citing *Terry v. Lock*, 343 Ark. 452, 37 S.W.3d 202 (2001)). *See also Hoyle v. Faucher*, 334 Ark. 529, 533, 975 S.W.2d 843, 845 (1998) (citing *Priest v. Polk*, 322 Ark. 673, 912 S.W.2d 902 (1995)). Subject-matter jurisdiction is determined from the pleadings and not the proof. *Naturalis Health, LLC*, 2018 Ark. 224, at 6, 549 S.W.3d at 906. Where the issue of subject-matter jurisdiction requires interpretation of a statute or constitutional provision, our review is *de novo*. *Id.* (citing *Tripcony v. Ark. Sch. for the Deaf*, 2012 Ark. 188, 403 S.W.3d 559).

### III. *Subject-Matter Jurisdiction*

Ultimately, no matter how Eureka Green phrases its case in the circuit court, the causes of action it brings, and how the State treats those pleadings, this is an administrative appeal of an "arbitrary and capricious disqualification of Eureka Green's application for a medical marijuana dispensary facility license" by the MMC and a challenge of the

applicability of the MMC's rules to Eureka Green. As such, we consider two issues to determine if there is subject-matter jurisdiction: Whether there is an appeal of an agency's administrative adjudication or if this case is seeking a declaratory judgment on the validity or applicability of the MMC's rules. *See* Ark. Code Ann. §§ 25-15-207, -212 (Repl. 2014 & Supp. 2021).

## A. Administrative Adjudication

Section 212 of the APA permits judicial review of agency adjudications. *Carpenter Farms Med. Grp., LLC*, 2020 Ark. 213, at 8, 601 S.W.3d at 118 (citing Ark. Code Ann. § 25-15-212(a)). However, such an adjudication takes place only following "the final disposition . . . in which the agency is required by law to make its determination after notice and hearing." *Id.* (quoting Ark. Code Ann. § 25-15-202(1), (6) (Supp. 2019)). This means that only "quasi-judicial" agency functions support further judicial review. *Id.* (citing *Tripcony, supra*). Quasi-judicial functions generally include hearing testimony, making findings of fact, rendering legal conclusions, and recording the proceedings. *Id.* (citing *Sikes v. Gen. Publ'g Co.*, 264 Ark. 1, 7, 568 S.W.2d 33, 36 (1978)).

The APA subjects only some, *not all*, agency decisions to circuit court review. *Id.* (citing *Tripcony, supra*) (emphasis added). Courts do not generally have jurisdiction to examine administrative decisions of state agencies. *Id.* at 6–7, 549 S.W.3d at 906. This limitation on judicial review of executive agency decisions is necessary because our constitution divides State government into three branches and requires that no branch "shall exercise any power belonging to either of the others." Ark. Const. art. 4, § 2. This is

4

foundational to our government. *Naturalis Health, LLC*, 2018 Ark. 224, at 6, 549 S.W.3d at 906. The judicial branch will not abdicate this constitutional provision by reviewing the day-to-day actions of the executive branch. *Id.* (citing *Ark. Livestock & Poultry Comm'n v. House*, 276 Ark. 326, 634 S.W.2d 388 (1982)).

Turning to the record on appeal, it is readily apparent that there is no quasi-judicial action of an agency on appeal. There was no hearing held by the MMC on Eureka Green's license or any of the challenges it raised to the circuit court. The MMC did not issue a notice of hearing. There was no testimony taken. There are no findings of fact or final orders from the MMC which resulted from a hearing. The record of the proceedings before the MMC are not included in the appeal to the circuit court or this court. All, or at least a substantial number of these items, are necessary to invoke the judiciary's ability to review an executive branch agency action. If there is no agency adjudication, then there is no action for a court to review. *Id.* at 7, 549 S.W.3d at 906. Subject-matter jurisdiction will not lie under this method of review of the MMC's actions regarding Eureka Green's license.

B. Validity or Applicability of the MMC's Rules

The next challenge which would invoke our subject-matter jurisdiction is a declaratory judgment on the validity or applicability of the MMC's rules. Declaratory judgments serve a much different purpose than review of an agency's adjudication. *Id.* The validity or applicability of a rule may be determined in an action for declaratory judgment if it is alleged that the rule, or its threatened application, injures or threatens to injure the plaintiff in his or her person, business, or property. *Id.* (citing Ark. Code Ann. § 25-15-207).

Examining a rule's "applicability" is not the same as examining its "application." *Naturalis Health, LLC*, 2018 Ark. 224, at 9, 549 S.W.3d at 907. Section 207 is limited to declarations concerning the rule—that the rule is either null and void, in the case of a validity challenge, or whether the rule should be applied to a particular person or situation, in the case of an applicability challenge. *Id.* Eureka Green's challenges in the case at bar are that the MMC violated its own rule and failed to follow the APA's model-rules requirement. *See* Ark. Code Ann. § 25-15-215. Neither challenge, as pled, goes to whether the rule was null and void nor if it was applicable to Eureka Green.

Like the appellees' complaints in *Naturalis Health, LLC*, Eureka Green's complaint neither challenges the "applicability" of any rule as contemplated by section 207 nor does it seek a declaration regarding whether ~~the~~ other rules should have been applied. 2018 Ark. 224, at 9, 549 S.W.3d at 907. As such, the circuit court did not have subject-matter jurisdiction over the Eureka Green's complaint under either section 207 or 212 and neither does this court. We reverse the circuit court's order and dismiss the ~~appeal~~ complaint.

As a final note, the Chief Justice has previously commented that the MMC had a constitutional duty it had neglected by its failure to adopt necessary rules for the administration of the Arkansas Medical Marijuana Amendment. *Id.* at 11, 549 S.W.3d at 908 (Kemp, C.J., concurring). That was 2018. *Id.* It is now four years later, and the MMC has still not adopted these necessary and mandatory rules. While the issue of the failure to adopt administrative rules is not properly before us in this appeal, we take this opportunity

6

to remind the MMC about the importance of following the Arkansas Constitution and again urge it to adopt rules for the administration of the medical marijuana amendment.

Reversed and dismissed.

BAKER, J., concurs.

WOMACK, J., concurs without opinion.

HUDSON and WYNNE, JJ., dissent.

**COURTNEY RAY HUDSON, Justice, dissenting**. Here we go again. We are wrestling with another legal conflict involving the Medical Marijuana Commission (MMC) and its refusal to follow its constitutional mandate. Yet, the MMC is entrusted with the "comprehensive administration" of a burgeoning Arkansas industry. Because today's majority opinion dismissing this appeal for lack of subject-matter jurisdiction is inconsistent with this court's opinion in *Arkansas Department of Finance & Administration v. Carpenter Farms Medical Group, LLC.*, 2020 Ark. 213, 601 S.W.3d 111, I must respectfully dissent.

Eureka Green alleges that the MMC has failed to adopt the Attorney General's model agency rules and failed to explain why it has not done so. It claims that the model rules "mandate that an agency will reinitiate action on an application when the requested information is returned or supplemented." Eureka Green contends that if the model rules had been adopted, it would have prevented the "arbitrary disqualification of successful applicants based on illegal and selective application of another rule." Additionally, Eureka Green argues that the MMC's decision to refund a portion of its application fee and remove it from the reserve pool violated constitutional due-process and equal-protection guarantees. According to Eureka Green, jurisdiction is proper pursuant to the Administrative Procedure Act, specifically Arkansas Code

7

Annotated section 25-15-215(b)(1), "as allowed via Ark. Code Ann. § 25-15-207(a)." It also claims jurisdiction under the Arkansas Declaratory Judgment Act, Arkansas Code Annotated sections 16-111-101 et seq. Eureka Green is correct in both instances.

In *Carpenter Farms*, Carpenter Farms submitted an application for one of four marijuana cultivation licenses. Carpenter Farms was told that its application was complete and would be submitted for scoring. However, the application was later disqualified due to alleged discrepancies in its description of Carpenter Farms' ownership structure. As the court framed the issues in *Carpenter Farms*, "Carpenter Farms' complaint rests mainly on two legal theories: (1) the Commission violated the APA and MMC Rules and (2) the Commission violated equal protection by subjecting Carpenter Farms' application to disparate treatment." *Id.* at 4, 601 S.W.3d 116. The court described the relief sought as follows:

> Carpenter Farms requested that the circuit court reinstate its application; allow its score to stand; declare that its disqualification was ultra vires, arbitrary, capricious, and contrary to law; declare that the Commission's failure to adopt model rules was improper; and reject [Travis] Story's score and recalculate Carpenter Farms' score "to be five times the average of the other four scores." If the court denied its request to reinstate its score, Carpenter Farms asked the court to vacate the disqualification; order a hearing under Arkansas Code Annotated sections 25-15-207 and 25-15-212(B) (Repl. 2014 & Supp. 2019); and disqualify [Mary Robin] Casteel and Story from further participation. It also asked for an injunction prohibiting the granting of additional cultivation licenses.

*Id.* at 5, 601 S.W.3d 116.

Appellants filed a motion to dismiss and argued that they were entitled to sovereign immunity. Despite the invocation of sovereign immunity, this court affirmed in part the circuit court's order denying appellants' motion.

Here, Eureka Green asserts that the MMC has failed to adopt the Attorney General's model agency rules. It also contends that the MMC failed to explain why it did not adopt the

model rules. This is precisely the nature of the claim that the majority allowed to proceed in *Carpenter Farms*. In *Carpenter Farms* we said,

> Carpenter Farms maintains that the MMC Rules were invalid because (i) they are not the ones promulgated by the Attorney General and (ii) the Commission failed to explain why it adopted rules different from the model. We agree that this particular claim can proceed under section 207 because it involves the applicability or validity of the Commission's rules, rather than the Commission's application of those rules to Carpenter Farms' set of circumstances.

*Id.* at 11, 601 S.W.3d 119.

Just like the applicant in *Carpenter Farms*, Eureka Green has alleged that the MMC rules are invalid because the MMC has failed to adopt the Attorney General's model rules and failed to explain why it has not done so. Arkansas Code Annotated section 25-15-215 mandates that agencies "shall adopt . . . those model rules that are practicable" and if it does not, the agency shall "state the reason why the relevant portions of the model rules are impracticable." Accordingly, Eureka Green's claim that the MMC rules are invalid not only vests the circuit court with jurisdiction, but it also sets forth a claim to which sovereign immunity is inapplicable. We should be consistent with our precedent and affirm the circuit court's determination that sovereign immunity does not apply to Eureka Green's section 207 claim.

Additionally, Eureka Green should be allowed to seek declaratory relief pursuant to our declaratory-judgment statute. It is well settled that circuit courts have subject-matter jurisdiction to consider declaratory relief for alleged constitutional violations. *See Ark. Dep't of Health v. Solomon*, 2022 Ark. 43 (holding that the circuit court had subject-matter jurisdiction to consider declaratory and injunctive relief for due-process and equal-protection claims). The majority wholly ignores this independent basis for jurisdiction and exception to sovereign immunity that

was articulated in *Carpenter Farms*. There, after considering Carpenter Farms' equal-protection

claims, a plurality[1] of the court noted that

> [t]he circuit court has subject-matter jurisdiction to determine whether the Commission violated Carpenter Farms' constitutional rights in this record. *See* Ark. Code Ann. §§ 16-111-101 et seq. (Repl. 2016). Carpenter Farms may pursue relief under the declaratory-judgment cause of action against the State.

*Carpenter Farms*, 2020 Ark. 213, at 14, 601 S.W.3d at 121. Much like the applicant in *Carpenter*

*Farms*, Eureka Green has alleged that its constitutional rights were violated by the MMC's

decisions. A majority of this court concluded in *Carpenter Farms* that an equal-protection claim

could be pursued in the face of a sovereign-immunity challenge. Similarly, the circuit court in

this case has jurisdiction to consider declaratory relief for an alleged constitutional violation. We

should not cavalierly ignore such claims.

It should also be noted that today's appeal is just the latest, and far from the last, in a

long line of cases relating to the inner workings of the MMC. We would do well to remember

Chief Justice Kemp's charge to the MMC almost four years ago when he wrote,

> The MMC has a constitutional duty to adopt rules necessary for its "fair, impartial, stringent, and comprehensive administration" of the Arkansas Medical Marijuana Amendment. *See* Ark. Const. amend. 98, § 8(d)(3). I urge the MMC to review its rules and procedures and to cure any deficiencies.

---

[1]Although only three members of the court would have allowed Carpenter Farms to pursue its equal-protection claim pursuant to our declaratory-judgment statute, *Carpenter Farms* in no way prevents a party from seeking declaratory relief as to a constitutional claim. Three other justices joined a concurring and dissenting opinion agreeing that Carpenter Farms could proceed with an equal-protection claim but concluded that judicial review of that claim was available in the context of an adjudicatory appeal pursuant to Arkansas Code Annotated section 25-15-212. Here, Eureka Green has not asserted jurisdiction pursuant to section 212.

*Arkansas Dep't of Fin. & Admin. v. Naturalis Health, LLC*, 2018 Ark. 224, at 11, 549 S.W.3d 901, 908. (Kemp, C.J., concurring).

Unfortunately, the MMC has ignored the Chief Justice's admonition. From *Naturalis* to *Carpenter Farms*, to today's decision, and undoubtedly others to come, we see one appeal after another that highlights the MMC's shortcomings. Worse, we should not forget that during our consideration of the *Naturalis* case in 2018, the Attorney General advised us that a commissioner had been offered a bribe, that he did not report it, and that there were other, as-yet unsubstantiated allegations of improprieties in the scoring of cultivation licenses.

Undoubtedly, medical marijuana is big business in our state, and recreational marijuana may be in the offing. Arkansas medical marijuana sales reportedly totaled almost $265 million in 2021. Those sales are subject to heavy taxation that generates substantial tax revenue. By neglecting its duty to adopt adequate rules, the MMC is abdicating its duty to properly regulate this exploding industry. The MMC must adopt clear and necessary rules to allow for a level playing field, and we should not excuse its failure to do so. In the meantime, Eureka Green deserves more than a cursory dismissal of its complaint. Therefore, in reliance on this court's decision in *Carpenter Farms*, I would hold that the circuit court has jurisdiction to proceed to a decision on the merits of Eureka Green's complaint and affirm the circuit court's order. A system without checks and balances is ripe for at least the appearance of improper influence. The MMC should not be insulated from review.

I respectfully dissent.

WYNNE, J., joins.

*Leslie Rutledge*, Att'y Gen., by: *Maryna Jackson*, Ass't Att'y Gen., for appellants.

11

*WH Law | We Help*, by: *Chris W. Burks*, for appellee.